UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**06-80945**

ROBERT CAPONE,

    Plaintiff,

Case No:

v.

**CIV-DIMITROULEAS**
**MAGISTRATE JUDGE**
**SELTZER**

ESTATE OF BRETT LANE ISON,
CORREAN C. ISON, Personal
Representative of the Estate of Brett
Lane Ison, DIRECTIONAL AD-VANTAGE
HOLDINGS, LLC, TRAL INVESTMENTS,
LLC, HAROLD "HAL" DIVINE, RICHARD
DIVINE, and JOHN DOES 1-10,

    Defendants.

_____/

## COMPLAINT

ROBERT CAPONE, for his Complaint alleges as follows:

1.    Plaintiff Robert Capone ("Capone"), is a citizen of the State of New Jersey, Defendant Directional Ad-Vantage Holdings, LLC ("Directional Holdings"), is a Delaware limited liability company having its principal address in the State of Florida, Tral Investments, LLC is a Delaware limited liability company having its principal address of the State of Connecticut, Defendant Harold "Hal" Divine is a citizen of the State of Connecticut, Richard Divine is a citizen of the State of Colorado, and the Estate of Brett Lane Ison is domiciled in Florida. The matter in controversy exceeds, exclusive of interest and costs, the sum specified by 28 U.S.C. § 1332.

A.  **Directional Holdings**

2. In or about 1998, Capone and his associate Dennis Boggi ("Boggi"), were introduced to Brett Ison ("Ison"), a South African native who resided in Boca Raton, Florida.

3. In a 1998 meeting in Florida, Ison pitched his idea for the creation of a business which would manufacture commercial signs which municipalities would display in exchange for certain license fees. Ison discussed the need for capital and lobbying and at the end of the meeting, the parties were in agreement that they wished to pursue Ison's proposed business, which Ison tentatively called Directional Ad-Vantage.

3. From November 1998 through January, 1999, Capone received cash flow projections and other information about the proposed business from Ison.

4. On behalf of the business, Capone met with lobbyists in Tallahassee, Florida to develop municipal interest in the business concept.

5. During some of these meetings, Ison represented that Capone had a minority ownership interest in the business of about twenty (20%) percent.

6. Ison also informed Capone that Harold "Hal" Divine was interested in making an investment in the business and that Divine required a controlling interest.

7. In February 1999, Capone, Ison and Divine exchanged drafts of an agreement for the capital structure and ownership interests in a limited liability company to be known as "Directional Ad-Vantage Holdings, LLC."

8. On February 5, 1999, Divine provided the final version of the Directional Holdings agreement to Ison and Capone by mail and in his cover letter, stated that the agreement was a "binding commitment on each of us." A copy of Divine's February 5,

1999 letter is attached as Exhibit "A." The parties' agreement was contained in a "Binding Letter of Intent Formation of Directional Ad-Vantage Holdings, LLC." A copy of the agreement is attached as Exhibit "B".

9. Ison, Divine and Capone, as per Divine's cover letter, consented to the "Binding Letter" by signing the cover letter.

10. The "Binding Letter" provided that there would be two "Funding Commitment[s]": the "Divine Funding Commitment," and the "Capone Funding Commitment."

11. The "Divine Funding Commitment" required Hal Divine to contribute $130,000 to Directional Holdings at "closing", an additional $170,000 by June 1, 1999 to fund the operating expenses of Directional Holdings' subsidiary, "Directional Ad-Vantage of Florida, LLC" ("Directional Florida"), a Florida limited liability company, $175,000 by October 1, 1999 and an additional $350,000 "as needed" to fund the manufacture of signs by Directional Florida.

12. In exchange for his fulfillment of the "Divine Funding Commitment", Divine was to received 54,000 Class A Convertible Preferred Units of Directional Holdings (the "Preferred Units"). The Preferred Units were convertible "at any time at the option of [Divine], into "common units" of Directional Holdings on a 1:1 basis. They also carried a liquidation preference to the common units with a liquidation value of $15.28 per unit.

13. It is believed, though unknown at this time, that Divine made some if not all of the "Divine Funding Commitment."

14. As for the "Capone Funding Commitment", Capone was obligated to contribute $70,000 at "closing", an additional $30,000 to Directional Holdings by June 1, 1999 to fund Directional Florida's operating expenses, prior to October 1, 1999 an additional $25,000 for Directional Florida's operating expenses and $50,000 "as needed" to fund the manufacture of signs.

15. In exchange for his fulfillment of the "Capone Funding Commitment", Capone was to receive 20,000 Directional Holdings Class A Preferred Units under similar terms as Divine.

16. Directional Holdings also had a call option to purchase Capone's interest if Capone failed to fulfill the "Capone Funding Commitment" or he failed to procure a certain number of sign contracts by October 1, 1999.

17. The terms of the call option were never met and Directional Holdings did not purchase Capone's 20,000 Preferred Units.

18. Capone fulfilled the "Capone Funding Commitment", as agreed to by the parties, by paying for the expenses of Directional Holdings without reimbursement and he was entitled to receive 20,000 Preferred Units or an equivalent ownership interest in Directional Holdings.

19. Ison, under the "Binding Letter", for his "services" rendered to Directional Holdings and Directional Florida, was to receive 26,000 common units.

20. From February 1999 through April 2003, Capone, with the knowledge and agreement of Ison and Harold "Hal" Divine, traveled throughout the United States and Europe on behalf of Directional Holdings and Directional Florida to assist their marketing, sales, and manufacturing efforts.

21. Directional Holdings and/or Directional Florida, upon information and belief, have grown substantially since 1999.

22. Upon information and belief, Directional Holdings and/or Directional Florida or companies affiliated with them, such as The Smart Lite Company, a Florida corporation, have sold or licensed thousands of signs in the United States, and possibly abroad, thereby creating substantial value for the investors of Directional Holdings.

23. Neither Directional Holdings nor Directional Florida have ever provided Capone with an annual report, balance sheet, financial statement or other indicia of sales, income and earnings to properly determine the value of his interest.

B.  **The Death of Brett Ison**

24. From the commencement of Directional Holdings in 1999 to until about 2005, Ison was in control of Directional Holdings and served as a Manager.

25. Upon information and belief, Ison exercised authority over the day to day operations of Directional Holdings.

26. Upon information and belief, Ison became ill in 2004.

27. On August 8, 2005, Ison passed away.

28. By order of the Circuit Court of Palm Beach County, Florida, dated September 8, 2005, Correan C. Ison, the widow of Brett Ison, was appointed the personal representative of the Estate of Brett Lane Ison, Case No. 05-2005-CP-006142.

C.  **The Fall Out From Ison's Death**

29. Since Ison's death, Capone has sought information from Directional Holdings and Correan C. Ison, the Personal Representative of the Estate of Brett Lane Ison and Ison's widow, concerning the status of Capone's ownership interest in

Directional Holdings, Capone's percentage ownership, the sales, earnings and income of Directional Holdings and the value of Capone's interest.

30. On October 5, 2005, Capone received an unexpected telephone call from attorney Lindsey Trowell of the law firm of Fowler White Boggs Banker P.A., who identified himself as the attorney for Directional Holdings and the Estate of Brett Lane Ison. Trowell stated that the position of Directional Holdings is that in 2002 Capone resigned as a director and officer of Directional Holdings and relinquished his ownership interest, without payment or compensation.

31. Capone advised Trowell that Directional Holdings' position was inaccurate as he never resigned as an officer and director and never relinquished his ownership interest.

32. A few days thereafter, Correan C. Ison telephoned Capone to state that Directional Holdings recognized that Capone owned a minority interest in the company, but she added that the extent of Capone's ownership interest in Directional Holdings was unclear. Ms. Ison assured Capone that his ownership interest would be properly determined and acknowledged by Directional Holdings.

33. Since October, 2005, Directional Holdings has not acknowledged Capone's ownership interest.

34. On January 11, 2006, Directional Holdings filed its Annual Report as a foreign limited liability authorized to do business in the State of Florida, and deleted Brett Ison as a manager and substituted the Estate of Brett Ison as a manager. The 2006 Annual Report further listed Defendant Tral Investments, LLC and Richard D. Divine as

the other managers. (Richard D. Divine is the son of Harold "Hal" Divine.) A copy of the 2006 Annual Report is attached as Exhibit "C".

35. Based upon the representations of Lindsey Trowell and Correan C. Ison on behalf of Directional Holdings to Capone and its 2006 Annual Report, Capone's ownership of Directional Holdings is not accurately reflected on the books and records of Directional Holdings and Directional Holdings does not acknowledge Capone's ownership interest.

36. Upon information and belief, Tral Investments, LLC may claim an ownership interest in Directional Holdings.

37. Upon information and belief, Richard D. Divine may claim an ownership interest in Directional Holdings.

38. Upon information and belief, Harold "Hal" Divine may claim an ownership interest in Directional Holdings.

39. Upon information and belief, the Estate of Brett Ison may claim an ownership interest in Directional Holdings.

40. Upon information and belief, others who are presently unknown may claim an ownership interest in Directional Holdings, and they have been designated as John Does 1-10 until they are identified and served with process in this action.

## COUNT I - BREACH OF CONTRACT

41. Capone realleges the allegations contained in paragraphs 1 - 40 above.

42. Directional Holdings, Howard "Hal" Divine, Ison and the Estate of Brett Ison breached the "Binding Letter of Intent Formation of Directional Ad-Vantage

7

Holdings, LLC" by failing to issue Directional Holdings securities to Capone reflecting his correct ownership interest.

WHEREFORE, Capone requests that judgment be entered in his favor against Directional Holdings, Howard "Hal" Divine, and the Estate of Brett Ison and that Directional Holdings be directed to issue securities to Capone reflecting his true ownership interest and if specific performance is not granted, that a money judgment be entered in an amount reflecting the present value of his ownership interest.

## COUNT II - DECLARATORY JUDGMENT

43.     Capone realleges the allegations contained in paragraphs 1 - 40 above.

44.     Each of the defendants is claiming a substantial if not majority ownership interest in Directional Holdings.

45.     By reason of the conflicting claims of the defendants, Capone is in great doubt as to true ownership interests of each defendant and his percentage ownership interest, along with the rights derived therefrom.

WHEREFORE, Capone requests that judgment be entered which declares the ownership interests of the parties in Directional Holdings and the rights derived therefrom, together with any other relief the Court deems just and proper.

Dated: October 5, 2006

GREENBERG TRAURIG, P.A.
5001 Town Center Circle, Suite 400
Boca Raton, Florida 33486
Telephone: (561) 955-7600
Fax: (561) 338-7099
MendelsohnS@gtlaw.com

By: _____
STEPHEN A. MENDELSOHN
Florida Bar No: 849324

BOC-FS1\406553v04\95086.010100

FEB 05 1999 13:39 FR INTERLAKEN CAPITAL   203 xxx xxxx  TO  15xxxxxxxx   P.xx

**8034 FISHER ISLAND DRIVE**
**FISHER ISLAND, FL 33109**
**(305) 531-1555**

RECEIVED
AUG 1 2006
By_____

February 5, 1999

Mr. Brett Ison
350 S.E. Mizner Blvd
Boca Raton, FL 33432

Mr. Bob Capone
1017 Louther Drive
Cherry Hill, NJ 08034

Re:    Directional Ad-Vantage Holdings, Inc.

Dear Brett and Bob:

We have been discussing the formation of a new entity, Directional Ad-Vantage Holdings, LLC ("Ad-Vantage Holdings") that will, through one or more subsidiaries, start a business to create a new advertising medium, namely the placement of lighted street signs with attached advertising, in cities and towns throughout the United States. This is similar to a business Brett was actively engaged in in South Africa. Attached is a Term Sheet setting forth the terms that we have been discussing.

This letter represents a binding commitment on each of us. Once we have executed this letter, I will retain counsel and work to prepare final documents. We all agree that we have executed the letter of intent knowing that many issues will need to be more fully addressed in definitive documents. Please sign this letter in the space provided below and initial each page of the Term Sheet indicating your agreement with the terms of each.

Very truly yours,

Hal Divine

Agreed to this  5
day of February, 1999
_____
Brett Ison

Agreed to this  6
day of February, 1999
_____
Bob Capone

EXHIBIT "A"

## BINDING LETTER OF INTENT
## FORMATION OF
## DIRECTIONAL AD-VANTAGE HOLDINGS, LLC

**AD-VANTAGE HOLDINGS:** Directional Ad-Vantage Holdings, LLC will be a limited liability company formed under the laws of the State of Delaware ("Ad-Vantage Holdings").

**AD-VANTAGE FLORIDA:** Directional Ad-Vantage Florida, LLC will be a limited liability company formed under the laws of the State of Delaware ("Ad-Vantage Florida") and will be a wholly-owned subsidiary of Ad-Vantage Holdings. Ad-Vantage Florida will engage in the illuminated street sign advertising business in Florida.

1. **AD-VANTAGE HOLDINGS**

   A. *Initial Capitalization:*

   1. **Hal Divine Investment:** Hal Divine, in exchange for making the Divine Funding Commitment (as defined below), will receive 54,000 Ad-Vantage Holdings Class A Convertible Preferred Units (the "Class A Preferred Units"). The Class A Preferred Units will have the following characteristics: (i) convertible at any time at the option of the holder into Common Units on a unit for unit basis, and (ii) liquidation preference equal to $15.28 per Unit (senior to the Ad-Vantage Holdings Common Units).

   The "Divine Funding Commitment" means that (i) Mr. Divine will contribute $130,000 to Ad-Vantage Holdings at closing to help fund Ad-Vantage Florida operating expenses, (ii) Mr. Divine will contribute $170,000 to Ad-Vantage Holdings on June 1, 1999 to help fund Ad-Vantage Florida operating expenses, and (iii) if prior to October 1, 1999, Ad-Vantage Florida has met the Second Funding Criteria (as defined below), then Mr. Divine will promptly contribute an additional $175,000 to Ad-Vantage Holdings to help fund Ad-Vantage Florida operating expenses, and will contribute an additional $350,000 to Ad-Vantage Holdings as needed to help fund the manufacture and purchase of Ad-Vantage Florida signs.

-1-

Word\Phoeng\Directvantage\LOIAdvantage1.

Initials: Divine:_____ Isom: _____ Capone: _____



EXHIBIT "B" COMPOSITE

The "Second Funding Criteria" means that Ad-Vantage Florida has signed agreements with at least three cities, which agreements provide for an aggregate of at least 400 committed sign sites.

2. **Bob Capone Investment:** Bob Capone, in exchange for making the Capone Funding Commitment (as defined below), will receive 20,000 Ad-Vantage Holdings Class A Preferred Units.

The "Capone Funding Commitment" means that (i) Mr. Capone will contribute $70,000 to Ad-Vantage Holdings at closing to help fund Ad-Vantage Florida operating expenses, (ii) Mr. Capone will contribute $30,000 to Ad-Vantage Holdings on June 1, 1999 to help fund Ad-Vantage Florida operating expenses, and (iii) if prior to October 1, 1999, Ad-Vantage Florida has met the Second Funding Criteria, then Mr. Capone will promptly contribute an additional $25,000 to Ad-Vantage Holdings to help fund Ad-Vantage Florida operating expenses, and will contribute an additional $50,000 to Ad-Vantage Holdings as needed to help fund the manufacture and purchase of Ad-Vantage Florida signs.

Because Ad-Vantage Holdings retains the right to purchase Mr. Capone's Units pursuant to the Ad-Vantage Holdings/Capone Call right (as defined below), until such time as the Ad-Vantage Holdings Call Right shall have expired, the certificate representing Mr. Capone's Units shall be held by Ad-Vantage Holdings, but Mr. Capone shall have the right to vote such Units.

3. **Brett Ison Investment:** In consideration of services rendered to Ad-Vantage Holdings and Ad-Vantage Florida, Mr. Ison will receive 26,000 Common Units. The Common Units will have the following characteristics: upon liquidation, after the Class A Preferred Units have received their liquidation preference, the Common Units will share in any additional assets on a pari passu basis with the Class A Preferred Units.

-2-

B. *Additional Capital:*   1. **Hal Divine Best Efforts Commitment:** The parties anticipate that if the Second Funding Criteria are met prior to October 1, 1999, Ad-Vantage Holdings will need an additional $2 million of capital (in excess of the Divine Funding Commitment and the Capone Funding Commitment) to achieve its growth objectives. If Ad-Vantage Holdings is able to meet the Second Funding Criteria prior to the date that is eight months after closing, Mr. Divine has committed to use his reasonable best efforts to provide the $2 million in capital, either from his own resources or from one or more third parties, in the form of debt or equity capital (the "$2 Million Capital Infusion").

2. **Brett Ison Anti-Dilution Protection:** So long as Ad-Vantage Florida has met the Second Funding Criteria prior to the date that is eight months after closing, if and when Mr. Divine arranges for the Second Capital Infusion, then Ad-Vantage Holdings will structure the $2 Million Capital Infusion in such a way that after the investment is completed Mr. Ison will own not less than 26% of the equity units of Ad-Vantage Holdings on a fully diluted basis (except that Mr. Ison's 26% will be calculated without regard to any options issued under the Option Plan (as defined below) or any Units issued as a result of the exercise of options issued under the Option Plan). Ad-Vantage Holdings can provide this anti-dilution protection to Mr. Ison by either (i) structuring the $2 Million Capital Infusion so that no new equity interests in Ad-Vantage Holdings are issued, or (ii) issuing options to Mr. Ison to purchase Common Units with an exercise price equal to the fair market value of Common Units on the date of grant which, if exercised, would permit Mr. Ison to retain the 26% equity ownership percentage of Ad-Vantage Holdings.

C. *Ad-Vantage Holdings/ Capone Call Right:*   If (i) Mr. Capone fails to fulfill all or any portion of his obligations under the Capone Funding Commitment, or (ii) by October 1, 1999, Mr. Capone has not negotiated and executed contracts between Advantage Florida and one or more cities

-3-

W:\RFloors\DrinkvestingALLC\Agreement2                Initials: Divine:_____, Ison: _____, Capone: _____

providing for at least 400 committed sign sites; then in either such case, subject to the following paragraph, for a period of three months beginning on October 15, 1999, Ad-Vantage Holdings shall have the right to purchase all of Mr. Capone's Class A Preferred Units (and any Common Units into which Mr. Capone may have converted some or all of his Class A Preferred Units) for a purchase price equal to the amount Mr. Capone paid to Ad-Vantage Holdings for his Class A Preferred Units (the "Ad-Vantage Holdings/Capone Call Right").

Notwithstanding the preceding paragraph, if (i) Mr. Capone shall have fulfilled all of his obligations under the Capone Funding Commitment, and (ii) on any date between October 1, 1999 and October 15, 1999, Mr. Capone shall have paid an additional $130,600 to Ad-Vantage Holdings as consideration for his 20,000 Class A Preferred Units (such that Mr. Capone's total consideration for his 20,000 Class A Preferred Units equals $305,600); then upon the occurrence of the events described in clauses (i) and (ii) the Ad-Vantage Holdings/Capone Call Right shall terminate.

D. *Ison Call Right:*

If the Second Funding Criteria have been met prior to October 1, 1999, and if Mr. Divine then (i) fails to fulfill all or any portion of his obligations under the Divine Funding Commitment, or (ii) is unsuccessful in providing the $2 Million Capital Infusion; then in either case for a period of three months after the date on which Mr. Divine has failed to fulfill the conditions described in either clause (i) or clause (ii) above, Mr. Ison shall have the right to purchase all of Mr. Divine's Class A Preferred Units (and any Common Units into which Mr. Divine may have converted some or all of his Class A Preferred Units) for a purchase price equal to the amount paid by Mr. Divine for his Units.

E. *Divine Put Right:*

If the Second Funding Criteria have not been met by October 1, 1999, then for a period of three months thereafter, Mr. Divine shall have the right to require Ad-Vantage Holdings and~~ ~~ to purchase his 54,000 Class A Preferred Units at a purchase

-4-

price equal to the amount paid by Mr. Divine for his Units.

F. *Member Control Agreements:*

1. **Voting:** Each Class A Preferred Unit and each Common Unit will be entitled to one vote. If Mr. Divine's voting ownership is diluted below 51% as a result of the $2 Million Capital Infusion, then so long as Mr. Divine and his Affiliates (as defined below) own all of the Class A Units purchased by Mr. Divine in accordance with this Term Sheet, Mr. Divine will have the right to vote a sufficient amount of Mr. Ison's Units to give Mr. Divine 51% of the Ad-Vantage Holdings Unit votes on a fully diluted basis. For purposes of this paragraph, Mr. Divine's "Affiliates" include Mr. Divine's spouse, Mr. Divine's children, trusts created for the benefit of Mr. Divine's spouse and children, and Andrew M. Bursky.

2. **Board of Managers:** Each of Ad-Vantage Holdings and Ad-Vantage Florida will be governed by a Board of five Managers elected by the members of the LLC. Messrs. Divine, Ison and Capone will agree to vote their Units for three directors nominated by Mr. Divine and two directors nominated by Mr. Ison.

3. **Officers:** Mr. Ison will be elected President and Chief Executive Officer of Ad-Vantage Holdings and Ad-Vantage Florida. Mr. Capone will be elected a Vice President of Ad-Vantage Holdings and Ad-Vantage Florida. The Managers will appoint such other officers of the companies as the Managers shall, in their discretion, determine.

Mr. Ison will have authority to (i) hire and fire all employees, (ii) enter into agreements with cities and advertisers, (iii) contract for the purchase of sign posts and other supplies and services, and (iv) otherwise conduct the business of Ad-Vantage Holdings; provided, however, that any expenditure or commitment in excess of $25,000 will require the approval of the Board of Managers.

-5-

Initials: Divine:_____, Ison:_____, Capone:_____

Upon presentation of properly itemized charges and invoices, or receipts therefor, consistent with normal Ad-Vantage Florida policies and procedures, Ad-Vantage Florida will reimburse Messrs. Ison and Capone for all reasonable expenses incurred by them in the performance of their duties as officers of Ad-Vantage Florida.

4. **Preemptive Rights:** Upon the sale of any Advantage Holdings equity Units (other than pursuant to any employee equity incentive plan approved by the Unit holders of Ad-Vantage Holdings), each of Messrs. Divine, Ison and Capone shall have the right to purchase that number of Units which will permit him to maintain his percentage ownership of Ad-Vantage Holdings equity.

5. **Right of First Refusal:** If at any time during the eight years following the closing Mr. Divine, Mr. Ison or Mr. Capone (for purposes of this paragraph a "Selling Unit Holder") shall receive an offer from a third party to purchase some or all of the Selling Unit Holder's Units, and if the Selling Unit Holder wishes to accept the offer, the Selling Unit Holder shall first give to the non-Selling Unit Holders the right to purchase the Units (pro rata in accordance with the number of Units held by each non-Selling Unit Holder) that the Selling Unit Holder proposes to sell, at the same price and on the same terms as the Selling Unit Holder proposes to sell the Units to the third party.

The non-Selling Unit Holders must inform the Selling Unit Holder of their intent to exercise this right of first refusal within 10 days of notice by the Selling Unit Holder, and must pay the Selling Unit Holder within 90 days thereafter.

6. **Tag Along:** If at any time during the eight years following the closing Mr. Divine proposes to sell some or all of his Ad-Vantage Holdings Units (other than to his Affiliates), Mr. Divine will give each of Mr. Ison and Mr. Capone the right to sell a pro rata portion of the Units to be sold on the same basis as Mr. Divine.

-6-

Initials: Divine:_____, Ison:_____, Capone:_____

7. **Death or Incapacity Mr. Divine:** In the event of the death or incapacity of Mr. Divine, for a period of six months after Mr. Divine's death or incapacity Mr. Ison shall have the right to purchase all (but not some) of Mr. Divine's Units at fair market value.

8. **Death or Incapacity of Mr. Capone:** In the event of the death or incapacity of Mr. Capone, for a period of six months after Mr. Capone's death or incapacity Mr. Ison shall have the right to purchase all (but not some) of Mr. Capone's Units at fair market value.

G. *Public Offering/Termination:*

If the Board of Managers determine to initiate an underwritten public offering of Ad-Vantage Holdings's equity securities, then the Ad-Vantage Holdings Unit holders shall cooperate to convert Ad-Vantage holdings from a limited liability company to a Florida corporation.

Upon completion of the public offering, all agreements of the Unit holders described in clauses G.1. through G.8. shall terminate.

II. **EQUITY INCENTIVE PLAN:**

Ad-Vantage Holdings will adopt an equity incentive plan that will provide for the issuance of options for up to 10,000 Common Units (the "Option Plan"), which options will be issued at the discretion of the Board of Managers to officers and employees of Ad-Vantage Holdings and its subsidiaries. The exercise price of options granted under the Option Plan will be equal to not less than the fair market value of the Common Units on the date of grant

III. **ISON EMPLOYMENT TERMS:**

Ad-Vantage Holdings will employ Mr. Ison as President and Chief Executive Officer upon the following terms:

1. **Salary:** $150,000 per annum, subject to such increases or bonuses as are approved by the Board of Managers.

-7-

Initials: Divine_____, Ison_____, Capone_____

2. Term: One year commencing on the closing date.

-8-

WordPerfect\Disadvantage\LOSAdvantage2.

Initials: Divine _____ Ison: _____ Capone: _____

** TOTAL PAGE.20 **

# 2006 LIMITED LIABILITY COMPANY ANNUAL REPORT
DOCUMENT# M01000002153

**FILED**
**Jan 11, 2006**
**Secretary of State**

**Entity Name:** DIRECTIONAL AD-VANTAGE HOLDINGS, LLC

**Current Principal Place of Business:**

C/O ROGIN, NASSAU, CAPLAN & HIRTLE LLC
185 ASYLUM CIR, CITYPLACE I 22ND FLR
HARTFORD, CT 06103

**New Principal Place of Business:**

**Current Mailing Address:**

C/O ROGIN, NASSAU, CAPLAN & HIRTLE LLC
185 ASYLUM CIR, CITYPLACE I 22ND FLR
HARTFORD, CT 06103

**New Mailing Address:**

FEI Number: 06-1543190     FEI Number Applied For ( )     FEI Number Not Applicable ( )     Certificate of Status Desired ( )

**Name and Address of Current Registered Agent:**

C T CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324     US

**Name and Address of New Registered Agent:**

The above named entity submits this statement for the purpose of changing its registered office or registered agent, or both, in the State of Florida.

SIGNATURE: _____
             Electronic Signature of Registered Agent                              Date

**MANAGING MEMBERS/MANAGERS:**

| | | **ADDITIONS/CHANGES:** | |
|---|---|---|---|
| Title: | MGR     ( ) Delete | Title: | ( ) Change ( ) Addition |
| Name: | TRAL INVESTMENTS, LL, C | Name: | |
| Address: | 185 ASYLUM ST. 22ND FLOOR | Address: | |
| City-St-Zip: | HARTFORD, CT 06103 | City-St-Zip: | |
| Title: | MGR     ( ) Delete | Title: | ( ) Change ( ) Addition |
| Name: | DIVINE, RICHARD D | Name: | |
| Address: | P.O. BOX 2601 | Address: | |
| City-St-Zip: | CRESTED BUTTE, CO 81224 | City-St-Zip: | |
| Title: | MGR     ( ) Delete | Title: | MGR     (X) Change ( ) Addition |
| Name: | ISON, BRETT | Name: | ESTATE OF BRETT ISON, |
| Address: | 4800 NORTH FEDERAL HIGHWAY, #306A | Address: | 4800 NORTH FEDERAL HIGHWAY, #200A |
| City-St-Zip: | BOCA RATON, FL 33431 | City-St-Zip: | BOCA RATON, FL 33431 |

I hereby certify that the information supplied with this filing does not qualify for the for the exemption stated in Chapter 119, Florida Statutes. I further certify that the information indicated on this report is true and accurate and that my electronic signature shall have the same legal effect as if made under oath; that I am a managing member or manager of the limited liability company or the receiver or trustee empowered to execute this report as required by Chapter 608, Florida Statutes.

SIGNATURE:   BONNIE HEATZIG FOR TRAL INVESTMENTS          ATTY               01/11/2006
             Electronic Signature of Signing Managing Member, Manager, or Authorized Representative / Date


EXHIBIT C

JS 44
(Rev. 12/96)

# CIVIL COVER SHEET

MAGISTRATE JUDGE
SELTZER

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
ROBERT CARONE

**DEFENDANTS**
ESTATE OF BRETT LANE ISON, CORREAN C. ISON, Personal Representative of Brett Lane Ison, et al.

CIV - DIMITROULEAS

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Palm Beach (NJ)
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Palm Beach
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Stephen A. Mendelsohn, Esquire, Greenberg Traurig, PA
5100 Town Centre Circle, Suite 400
Boca Raton, Florida 33486
(561) 955-7600

ATTORNEYS (IF KNOWN)

06-80945

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:   DADE,   MONROE,   BROWARD,   (PALM BEACH,)   MARTIN,   ST. LUCIE,   INDIAN RIVER,   OKEECHOBEE   HIGHLANDS

9:06CV 80945-WPD-BSS

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN X IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☒1 | Incorporated or Principle Place of Business In This State | ☐4 | ☐4 |
| Citizen of Another State | ☒2 | ☒2 | Incorporated and Principle Place of Business In Another State | ☐5 | ☒5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | | | |
| ☐ 110 insurance | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 Slate Reapportionment D |
| ☐ 120 Marine | ☐ 315 Airplane Product Liability | | B☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust D |
| ☐ 130 Miller Act C | | ☐ 365 Personal Injury - Product Liability | B☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | B☐ 630 Liquor Laws | A PROPERTY RIGHTS | B☐ 450 Commerce/ICC Rates/etc |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal injury Product Liability | B☐ 640 R R & Truck | | ☐ 460 Deportation |
| ☐ 151 Medicare Act | | PERSONAL PROPERTY | B☐ 650 Airline Regs | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐ 340 Marine | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 371 Truth in Lending | B☐ 690 Other | ☐ 840 Trademark | ☐ 850 Securities/Commodities/Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Properly Damage | A LABOR | B SOCIAL SECURITY | ☐ 876 Customer Challenge 12 USC 3110 |
| ☒ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Connect Product Liability | | | ☐ 720 Labor. Mgmt Relations | ☐ 863 DIWC/DIWW (405[g]) | ☐ 893 Environmental Matters |
| A REAL PROPERTY | A CIVIL RIGHTS | PRISONER PETITIONS | ☐ 730 Labor/Mgmt Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act G |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| B☐ 220 Foreclosure | ☐ 442 Employment | HABEAS CORPUS: | ☐ 740 Railway Labor Act | FEDERAL TAX SUITS | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | | A☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 890 Other Statutory Actions A ORB |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | B☐ 540 Mandamus & Other | A☐ 791 Empl Ret Inc. Security Act | A☐ 871 IRS - Third Party 26 USC 7609 | |
| ☐ 290 All Other Real Properly | ☐ 440 Other Civil Rights | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE
DO NOT CITE JURISDICTION AL STATUTES UNLESS DIVERSITY)

LENGTH OF TRIAL
via 3-4 days estimated (for both sides to try entire case)

**VII. REQUESTED IN COMPLAINT:**  CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ YES   ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instructions)

JUDGE _____   DOCKET NUMBER _____

DATE  October 6, 2006

SIGNATURE OF ATTORNEY OF RECORD

FB: 849324

**FOR OFFICE USE ONLY**
RECEIPT # 538393   AMOUNT 350 00   APPLYING IFP ____   JUDGE ____   MAG. JUDGE ____

American LegalNet, Inc.
www.USCourtForms.com