## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 06-80945-DIMITROULEAS/ROSENBAUM

ROBERT CAPONE,

       Plaintiff,

v.

ESTATE OF BRETT LANE ISON,
CORREAN C. ISON, Personal Representative
of the Estate of Brett Lane Ison,
DIRECTIONAL AD-VANTAGE HOLDINGS,
LLC, TRAL INVESTMENTS, LLC, HAROLD
"Hal" DIVINE, RICHARD DIVINE, and
JOHN DOES 1-10,

       Defendants.

_____/

### ORDER

      This matter comes before the Court upon Plaintiff Robert Capone's Motion for a Protective Order of Robert Capone and Universal Constructors, Inc. [D.E. 84], and Defendants Directional Ad-Vantage Holdings, LLC, TRAL INVESTMENTS, LLC, and Harold "Hal" Divine's Motion to Compel Production of Documents [D.E. 85]. The Court has carefully reviewed both Motions, all filings in support thereof and in opposition thereto, and the case file, and the Court has heard argument on both Motions at a hearing held on May 22, 2008. These Motions are now ripe for disposition.

### I.  BACKGROUND

      In this case Plaintiff Robert Capone ("Capone") alleges that he entered into an agreement with Brett Lane Ison ("Ison") and Defendant Harold "Hal" Divine ("Divine") through which Capone obtained an ownership interest in Directional Ad-Vantage (Florida), Inc., ("Directional"), a company

established to engage in the business of selling certain commercial signs that use "cutting-edge" technology. D.E. 53. According to the First Amended Complaint, in February, 1999, Capone, Ison, and, presumably, Divine, signed a "Binding Letter of Intent" regarding the formation of Directional. *Id.* Among other functions, the Binding Letter of Intent obligated Capone to make certain payments of capital into the company in exchange for an ownership interest in Directional. *Id.*

After Capone signed the Binding Letter of Intent, however, he claims to have had a conversation with Divine in which Divine allegedly relieved Capone of his obligation to contribute the entire amount of capital designated in the Binding Letter of Intent in order to receive his ownership interest in Directional. D.E. 53. Instead, Capone avers, Divine advised Capone that Capone's work in obtaining state and local governments to sign contracts with Directional would constitute Capone's investment earning him an ownership interest in Directional. *Id.*

Based on this discussion with Divine, Capone claims, Capone secured and made efforts to obtain contracts between Directional and several governmental entities through the use of his lobbying contacts. D.E. 53. Additionally, the First Amended Complaint asserts that Capone personally and through his company, Universal Constructors, Inc. ("UCI"), expended more than $200,000.00 in furtherance of Directional's business, and he received no reimbursement or other compensation for these outlays. *Id.*

Meanwhile, in August, 2005, Ison passed away. D.E. 53. Shortly thereafter, on October 5, 2005, according to the First Amended Complaint, Capone received a telephone call from attorney Lindsey Trowell, who identified himself as the attorney for Directional and/or Smart Lite, a division of Directional, and the Estate of Ison. *Id.* Capone alleges that Trowell advised him that it was the position of Directional/Smart Lite that Capone resigned as a director and officer of Directional/Smart

-2-

Lite in 2002 and relinquished his ownership interest at that time, without payment or compensation or consideration.  *Id.*

The First Amended Complaint further avers that Directional's 2006 Annual Report deleted Ison as manager and substituted the Estate of Ison as manager.  D.E. 53.  In addition, the 2006 annual Report identified Divine and Defendant TRAL Investments, Inc. ("TRAL"), as managers.  *Id.* Capone complains that Directional has not acknowledged any ownership interest of Capone in Directional.  *Id.*  In their Answer, Directional, Tral, and Divine assert that Capone has never had an ownership interest in Directional and does not have a right to one now.  D.E. 74.

Thus, Capone instituted this lawsuit.  The First Amended Complaint charges breach of contract (Count 1), promissory estoppel (Count 2), equitable estoppel (Count 3), unjust enrichment (Count 4), and it seeks a declaratory judgment as to the ownership interests in Directional of Capone and each of the Defendants.  D.E. 53.

During the course of discovery, on January 3, 2008, Defendants Directional, TRAL, and Divine served their First Request for Production on Capone.  D.E. 85, p. 3.  By letter dated February 15, 2008, Capone responded by producing his itemized deductions to his personal tax returns for the years 1998 through 2006.  *Id.*  Capone argued that the other sections of his tax returns were "not reasonably calculated to lead to the discovery of admissible evidence."  D.E. 85-3.  Capone served his Responses and Objections to the First Request for Production on March 3, 2008, setting forth general objections to the production requests as a whole and specifically objecting to Requests 1-7, although Capone responded in part to Requests 2 and 3 with an affidavit from his accountant, Paul Verna.  D.E. 85-4.

Capone produced documents responsive to the remaining discovery requests, D.E. 85, p. 4,

although Defendants complain that he has not produced any of his own records in response to Requests 11 through 14, and he has produced "only a handful of documents with regard to his company, Universal Constructors, Inc." *Id.*

On March 19, 2008, Defendants served a subpoena *duces tecum* on Verna & Associates ("Subpoena"), the accountant for Capone and UCI. D.E. 84. The Subpoena sought, among other records, tax returns and financial documents for Capone and UCI for the years 1999 through the present. D.E. 84-3. According to Capone, UCI's principal business involves road construction, and, with the exception of UCI's expenditures on behalf of Directional, UCI's business and financial status is entirely irrelevant to the issues before the Court in this case. *Id.* Consequently, on April 8, 2008, Capone filed his Motion for a Protective Order of Robert Capone and Universal Constructors, Inc., seeking to quash Requests 1 through 8 of the Subpoena and arguing that the requests were overbroad and that Defendants demonstrated no "compelling need" for the tax information they sought. D.E. 84.

Defendants responded, opposing Capone's Motion for Protective Order and simultaneously filing their Motion to Compel Production of Documents [Responsive to First Request for Production to Plaintiff Capone]. D.E. 85. Among other contentions, Defendants asserted that the financial information sought was highly relevant. More specifically, Defendants argued that the documents sought would (1) reveal how Capone and UCI treated alleged Directional expense items and the amounts of such alleged expenditures on behalf of Directional; (2) identify whether UCI is a Chapter C or a Chapter S corporation; and (3) show how Capone treated his ownership interests in other companies, thus, providing enlightenment regarding Capone's state of mind as to whether he believed at the time of preparing the tax returns that he actually had an ownership interest in

Directional.  *Id.* at pp. 15-16.

The Court set both Motions for a hearing, which was held on May 22, 2008.  During the course of the hearing, Capone challenged the notion that the tax returns would identify which business expenditures were on behalf of Directional and which were on behalf of other interests because the tax returns do not require the taxpayer to break out expenses by company.  He further noted that Directional issued no income or loss tax documents to Capone, so no reason existed for Capone to identify any ownership interest in Directional on his tax returns, and the absence of such an entry would mean nothing regarding Capone's state of mind pertaining to his alleged ownership interest in Directional.  Additionally, Capone complained that requiring the wholesale release of the tax returns for the years 1999 through the present, as Defendants had sought, would provide Defendants with an unfair advantage during settlement discussions.

Thus, to attempt to accommodate Defendants' stated reasons for needing the tax returns and other financial information sought, Capone offered to provide Defendants with redacted versions of his personal tax returns, as well as the tax returns of UCI.  Capone further agreed that Defendants were entitled to receive any entries from UCI's general ledger and other financial documents that Capone asserts represent expenditures on behalf of Directional.  This matter is now ripe for disposition.

## *II.  ANALYSIS*

Because Capone resists the discovery sought by Defendants on, effectively, the grounds of relevance, the Court begins with a review of Rule 26(b), Fed. R. Civ. P., which sets forth the permissible parameters of discovery.  Under that rule,

Parties may obtain discovery regarding any matter, not privileged,

> that is relevant to the claim or defense of any party . . . [that] appears
> reasonably calculated to lead to the discovery of admissible evidence
> . . . , [as long as the Court does not find that] (i) the discovery sought
> is unreasonably cumulative or duplicative, or . . . obtainable from
> some other source that is more convenient, less burdensome, or less
> expensive; (ii) the party seeking discovery has had ample opportunity
> by discovery in the action to obtain the information sought; or (iii) the
> burden or expense of the proposed discovery outweighs its likely
> benefit, taking into account the needs of the case, the amount in
> controversy, the parties' resources, the importance of the issues at
> stake in the litigation, and the importance of the proposed discovery
> in resolving the issues. . . ."

R. 26(b), Fed. R. Civ. P.  The Advisory Committee Notes to Rule 26 indicate that "[t]he purpose of

discovery is to allow a broad search for facts, the names of witnesses, or any other matters which

may aid a party in the preparation or presentation of his case."  Adv. Com. Notes, 1946 Amendment,

R. 26, Fed. R. Civ. P. (citations omitted).  Indeed, the Advisory Committee Notes approvingly cite

language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.*

(citation omitted).

    The courts have long recognized the wide scope of discovery allowed under the Federal

Rules of Civil Procedure.  As the Eleventh Circuit's predecessor court noted,

> The discovery provisions of the Federal Rules of Civil Procedure
> allow the parties to develop fully and crystalize concise factual issues
> for trial. Properly used, they prevent prejudicial surprises and
> conserve precious judicial energies.  The United States Supreme
> Court has said that they are to be broadly and liberally construed.

*Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir. 1973)[1] (citing *Hickman v. Taylor*, 329

U.S. 495, 507 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114-115 (1964)).  Of course, the scope

---

[1]Pursuant to *Bonner v. Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), opinions of the
Fifth Circuit issued prior to October 1, 1981, are binding precedent in the Eleventh Circuit.

of permissible discovery is not unbounded.  Requested discovery must be relevant, and it must not impose undue burden or be unreasonably cumulative, under the tests described in Rule 26(b)(2)(c).

Thus, for the Court to consider permitting discovery of the tax records and other financial documents Defendants seek, Defendants must demonstrate that the information sought is "relevant," as Rule 26 defines the term, and nothing else precludes disclosure.  The Court considers each of the categories of requested documents in turn:

**A.      Tax Returns of Capone and UCI**

As discussed above, Defendants argue that the tax returns of Capone and UCI are relevant for a number of reasons.  First, Defendants suggest that the tax returns would reveal how Capone and UCI treated expenses he claims he and UCI incurred on behalf of Directional.  D.E. 85, p. 15.  More specifically, Defendants explain that they would expect the tax returns to show whether the expenses were booked as receivables to UCI or whether UCI took business deductions for the expenses.  *Id.* The Court finds that such information, if available on the tax returns, would, indeed, be relevant. Among other pertinence, such information would provide evidence regarding the amount of expenses allegedly incurred on behalf of Directional, if any.

Capone, however, while not challenging the relevance of such information to the case, notes that tax returns do not require the taxpayer to itemize business expenses by the company that incurred them.  Consequently, even if disclosed, the tax returns will not reveal the information for which Defendants seek them.  The Court finds that Capone's description of the demands of tax returns is accurate, and, thus, the tax returns cannot provide relevant information pertaining to Defendants' first basis for seeking them.

Next, Defendants seek the tax returns because they will show whether UCI is a Chapter C or Chapter S corporation, which, in turn, would allow Defendants to be able to determine how UCI lists its expenses and the method of accounting used by UCI.  D.E. 85, p. 15.  Although Capone does not dispute the relevance of such information, Capone notes that Defendants asked him at his deposition whether UCI was a Chapter C or a Chapter S corporation, so subpoenaing UCI's tax returns for the same information is cumulative.  While the Court does not purport to opine on the reliability of Capone's deposition testimony, the Court can, nonetheless, understand why Defendants wish to see what UCI officially filed regarding its corporate status.

Alternatively, Capone suggests that redacting the tax returns to reveal only the type of corporation UCI is would equally serve Defendants' purpose in this regard, as the rest of the tax return information is not relevant to identifying UCI's claimed corporate status.  The Court agrees.  Thus, the Court will require Capone and his accountant to **produce UCI's tax returns with all information redacted other than its claimed corporate status**.

Third, Defendants argue that they require Capone's personal tax returns because they would provide information regarding Capone's ownership interests in other companies and how those ownership interests were reported, which may contradict Capone's claims that he spent substantial time working on behalf of Directional.  Additionally, Defendants contend that such information would be relevant to ascertaining Capone's state of mind with respect to whether he really believed that he had an ownership interest in Directional when he signed his tax returns for each of the relevant years.  Under Defendants' theory, because tax returns require taxpayers to declare the sources of their income and losses arising out of ownership interests in companies, Capone should have identified such information regarding Directional on his tax returns if he truly thought he had

an ownership interest in Directional.  D.E. 85, p. 16.

As Capone retorts, however, this theory holds water only if Directional actually distributed a gain or loss to Capone during the years in question, and that information can be discerned by reviewing tax documents Directional should have.  At the hearing, the parties agreed that Directional gave no such tax document to Capone and made no distribution to Capone.  Accordingly, Capone was under no obligation to identify any ownership interest he may have thought he had in Directional on his tax returns during the relevant time period.

Nevertheless, Defendants suggest that Capone's identification on his tax returns of other companies in which he held an ownership interest would also be relevant to Capone's claims regarding the amount of time he allegedly spent working on Directional matters.  D.E. 85, p. 16. Pursuant to Defendants' line of thought, it is much less likely that Capone could have expended the amount of time he claims pursuing Directional's interests if he simultaneously owned and operated several other corporations.  The Court notes, however, that ownership in a corporation does not necessarily equate to expenditure of time on behalf of that company.  In light of the fact that Capone has offered to produce redacted copies of his personal tax returns for the years 1999 through 2003 (the only years in which Capone claims to have performed work or expended money on behalf of Directional), though, the Court will order Capone to provide **copies of his personal tax returns for the years 1999 through 2003, which are redacted as to the numbers, but reflect Capone's stated ownership interests**.[2]  Defendants' Motion to Compel as it relates to all other tax information (*i.e.*, W-2, K-1, and 1099 forms and schedules related thereto) is denied, and Capone's Motion for

---

[2]In light of Capone's acquiescence in providing this information, the Court need not consider whether tax information is subject to a heightened showing of need or relevance.

Protective Order is granted.

**B.**   **Other Financial Information Pertaining to UCI**

Defendants also seek the financial statements and general ledgers of UCI from 1999 through the present.  They assert that such documents will show the following:

(1)      if [certain] payments made by [UCI] are listed in Accounts Receivable;

(2)      the character of the alleged expenses incurred on behalf of Directional;

(3)      whether Plaintiff used money from [UCI] to pay for his purported contributions to Directional;

(4)      if [UCI] was booking these expenses as additional income to Plaintiff;

(5)      whether the expenses were treated as a loan to Plaintiff; or

(6)      whether the expenses were deducted as business expenses.

D.E. 85, p. 16.  Capone does not disagree that such information would be relevant to the claims and defenses in this case.

Capone, however, argues that disclosure of UCI's general ledger as a whole, as well as of UCI's other financial information, is not necessary to accomplish the goals for which Defendants seek these documents.  In support of this contention, Capone notes that UCI is in the business of road construction, and that business has nothing to do with Directional.  Indeed, the parties describe UCI as a substantial business in its own right, which is located in New Jersey and employs four different superintendents who may simultaneously run separate building projects.  Capone claims that he simply used UCI to make certain apparently isolated payments on behalf of Directional, with

no other relationship of those payments to UCI other than that they happened to be made from UCI's accounts. Because the businesses of UCI and Directional do not intersect, Capone contends, a review of UCI's business as a whole is unjustified and will provide no enlightenment regarding the issues described above, except to the extent that the transactions involve expenditures allegedly relating in any way to Directional. Capone seeks no protection with respect to such transactions, and indicated at the hearing that he has begun working on production of them. He explained, however, that the process is laborious, as the accountant must wade through each transaction to find the relevant ones.

The Court agrees with Capone that the ledgers and other financial records of UCI are not relevant to this case to the extent that they do not address transactions relating to Directional. Nevertheless, although the Court is not unsympathetic to the number of hours involved in conducting a line-by-line review of UCI's financial records and ledger, discovery is coming to a close, and there is no doubt that any UCI transactions relating to Directional are relevant here. Accordingly, Capone has the choice of producing the requested ledgers and other financial information of UCI in their entirety or producing only those transactions relating in any way to Directional (as well as all related documentation), but the production, under either choice, must be completed by **Wednesday, June 4, 2008.** Thus, if Capone cannot complete his review of UCI's financial information and ledgers by that time, he will have to produce the responsive records in their entirety.

### *III. CONCLUSION*

For the foregoing reasons, Plaintiff's Motion for Protective Order [D.E. 83] is **GRANTED IN PART AND DENIED IN PART**, consistent with the terms of this Order, and Defendants'

Motion to Compel is similarly **GRANTED IN PART AND DENIED IN PART**, consistent with the terms of this Order.

      **DONE AND ORDERED** this 30th day of May, 2008.

                                  ROBIN S. ROSENBAUM

                                  UNITED STATES MAGISTRATE JUDGE

cc:    Hon. William P. Dimitrouleas

       Counsel of Record